**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| HEATHER GARCIA, INDIVIDUALLY ) | |
| AND AS HEIR TO ANTONIO GARCIA, JR., ) | |
| AND MIDWEST TRUST COMPANY ) | |
| AS THE ADMINISTRATOR ) | |
| OF THE ESTATE OF ANTONIO GARCIA, JR. ) | |
| AND ON BEHALF OF ALL HEIRS ) | |
| OF ANTONIO GARCIA, JR., ) | |
| ) | |
| Plaintiffs, ) | Case No. 2:19-cv-02049-JAR-KGG |
| ) | |
| v. ) | |
| ) | |
| CITY OF LEAVENWORTH, KANSAS, ) | |
| and MATTHEW HARRINGTON, ) | |
| ) | |
| Defendants. ) | |

**FIRST AMENDED COMPLAINT**

COMES NOW Heather Garcia, individually and as heir to Antonio Garcia, Jr.,

deceased, and Midwest Trust Company as administrator of and on behalf of the estate

of Antonio Garcia, Jr., and on behalf of all heirs of Antonio Garcia, Jr., Plaintiffs herein,

and files this Complaint against the City of Leavenworth, Kansas and Matthew

Harrington, Defendants, and for Plaintiffs' cause of action respectfully states as follows:

**SUMMARY**

1.     As a direct result of the policies, practices, customs and procedures of the City of

Leavenworth ("City"), decedent Antonio Garcia, Jr. ("Garcia") was intentionally

deprived of his constitutional right to be free from unreasonable searches and

seizures guaranteed to him by the United States Constitution. Defendant

Harrington ("Officer") acting in the course and scope of his employment with the City and acting under color of state law, unjustifiably shot and killed Garcia under circumstances where no reasonable police Officer would have done so. Under clearly established law regarding excessive deadly force, the Officer is not entitled to immunity for these actions.

2.     Despite the 47-year-old Garcia posing no reasonable immediate threat to the safety of any Officer or to anyone else, despite the fact that Garcia did not have a gun, despite the fact that Garcia never threatened Officer Harrington, despite Officer Harrington confirming that no crime was being committed, Officer Harrington shot Garcia.

3.     Garcia was legally sitting in his vehicle in his driveway at his home when he was shot by Officer Harrington.

4.     At no time was Garcia told he was being placed under arrest.

5.     Garcia was not trying to flee or resist and did not pose any immediate threat to the safety of Officer Harrington, anyone else or himself.

6.     As a result of the bullet wounds, Garcia suffered and eventually died.

7.     The unnecessarily aggressive behavior and impulsive, reckless and excessive use of deadly force by the City police was consistent with the Leavenworth Police Department's established training, practices, policies and customs.

8.     The City has a practice, policy, custom, and procedure of authorizing the use of deadly force in the absence of an actual immediate threat and/or longstanding policy, practice, custom and procedure of ratifying, defending and hiding a police

Officer's excessive use of force was/were a moving force of Garcia's shooting, injuries and death.

9.     The City's deliberate indifference to the obvious need for additional and different policies, training and supervision of its Officers was a moving force of Garcia's shooting, injuries and death.

## **PARTIES**

10.    Heather Garcia ("Plaintiff") is surviving spouse of Antonio Garcia, Jr.

11.    The Midwest Trust Company has been appointed as the administrator of the Estate of Antonio Garcia, Jr., deceased.

12.    Antonio Garcia had six children: Antonio Garcia III, Antoinette Harrington, Jasmine Roberson, A.D.G., G.D.G., and D.V.G.

13.    Carol Hall is serving as Guardian Ad Litem for the minor children, A.D.G., G.D.G., and D.V.G.

14.    Plaintiff Heather Garcia bring this cause of action on behalf of herself, on behalf of the Estate of Antonio Garcia, Jr., and on behalf of all heirs of Antonio Garcia, Jr.

15.    Plaintiff Heather Garcia is a resident of the State of Kansas.

16.    The City of Leavenworth, Kansas is a city and municipality organized under the laws of the State of Kansas.

17.    Defendant Matthew Harrington is a resident of the State of Kansas.

## JURISDICTION AND VENUE

18.     Pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343, this Court has original jurisdiction over this action arising under the laws of the United States. Defendants' acts, omissions, and wrongful conduct violate civil rights protected by the federal constitution and are actionable herein pursuant to 42 U.S.C. § 1983. Plaintiff's state law claims arise under the laws of the State of Kansas over which this Court may exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

19.     Venue is proper in this judicial district under 28 U.S.C. § 1391 because this is the judicial district in which the events or omissions giving rise to the claim occurred and because this is the judicial district in which the City is located.

## FACTS

20.     Upon information and belief (based upon facts peculiarly within the possession and control of the Defendant), at all times material herein, the City's practice, so well settled as to constitute custom or usage with force of law, was to approve, ratify, and defend the use of deadly force by City police Officers regardless of whether circumstances raised questions about whether there had been any actual, immediate threat to safety by: (1) failing to discipline, criticize or seek to change such conduct; (2) consistently and systematically failing to genuinely question or investigate the propriety of such conduct; and (3) consistently and systematically working to hide and protect from public disclosure the identity and role of Officers involved in such conduct.

21.   Based upon reasonable information and belief based and upon facts that will likely have evidentiary support after a reasonable opportunity for further investigation and discovery, the City's training and supervision deficiencies contributed to the pattern and practice of the use of excessive and unreasonable force by the City's Officers, including the Officer involved in the shooting death of Garcia.

22.   Based upon reasonable information and belief based and upon facts that will likely have evidentiary support after a reasonable opportunity for further investigation and discovery, the City failed to train its Officers, including the Officer involved in the shooting death of Garcia, in specific skills needed to handle foreseeable situations, thus presenting obvious potential for Constitutional violations.

23.   Based upon reasonable information and belief based and upon facts that will likely have evidentiary support after a reasonable opportunity for further investigation and discovery, the City effectively discouraged de-escalation tactics as a means of approaching and interacting with a suspect in order question about a matter even in the absence of any show of force or threat of force from the suspect involved.

24.   Based upon reasonable information and belief based and upon facts that will likely have evidentiary support after a reasonable opportunity for further investigation and discovery, the City's policies and training in effect at the time of Garcia's death demonstrated deliberate indifference to the rights of the inhabitants of Leavenworth, Kansas.

25.    Based upon reasonable information and belief based and upon facts that will likely have evidentiary support after a reasonable opportunity for further investigation and discovery, the City failed to adopt policies or train its Officers in order to avoid police shootings such as the shooting of Garcia. This failure to act was the result of deliberate indifference to the rights of the inhabitants of Leavenworth, Kansas.

26.    Based upon reasonable information and belief based and upon facts that will likely have evidentiary support after a reasonable opportunity for further investigation and discovery, the City's inadequate internal accountability measures contributed to the pattern and practice of excessive use of force by the City's Officers, including the Officer involved in the shooting death of Garcia.

27.    Based upon reasonable information and belief based and upon facts that will likely have evidentiary support after a reasonable opportunity for further investigation and discovery, the City systematically fails to act reasonably to reconcile any inconsistencies between the physical evidence and an Officer's version of the events concerning the use of force.

28.    Based upon reasonable information and belief based and upon facts that will likely have evidentiary support after a reasonable opportunity for further investigation and discovery, the City does not require supervising Officers to seriously and objectively review use of force incidents involving Officers.

29.    Based upon reasonable information and belief based and upon facts that will likely have evidentiary support after a reasonable opportunity for further investigation and discovery, the City failed to provide its Officers, including the

Officer involved in the shooting death of Garcia, with the operational guidance needed to limit the use of deadly force within the bounds of the Constitution.

30.   Based upon reasonable information and belief based and upon facts that will likely have evidentiary support after a reasonable opportunity for further investigation and discovery, the City's policies and customs as to the training and guidance of its Officers with regard to the use of deadly force was a moving force of the shooting and death of Garcia.

31.   Based upon reasonable information and belief based and upon facts that will likely have evidentiary support after a reasonable opportunity for further investigation and discovery, long before Garcia was shot and killed, the City knew or should have known that its practices and procedures would result in the unnecessary shooting of citizens, including Garcia.

32.   Based upon reasonable information and belief based and upon facts that will likely have evidentiary support after a reasonable opportunity for further investigation and discovery, the City had actual or constructive notice that its action or failure to act was substantially certain to result in constitutional violations, and the City consciously or deliberately chose to disregard the risk of harm, as evidenced by the tortious conduct.

33.   Based upon reasonable information and belief based and upon facts that will likely have evidentiary support after a reasonable opportunity for further investigation and discovery, information related to the shooting has been difficult to obtain due to the City's policy of creating a veil of secrecy surrounding the shooting.

34.   Based upon reasonable information and belief based and upon facts that will likely have evidentiary support after a reasonable opportunity for further investigation and discovery, the City's efforts were to cast doubt on the investigation into the shootings because there is no means of verifying or refuting findings that a use of force was supposedly reasonable.

35.   Based upon reasonable information and belief based and upon facts that will likely have evidentiary support after a reasonable opportunity for further investigation and discovery, prior to Garcia's shooting and death, the City made no serious effort to change its relevant policies, practices, procedures and customs regarding deadly force.

## THE UNLAWFUL SHOOTING AND KILLING OF ANTONIO GARCIA, JR.

36.   At all times relevant herein, Officer Matthew Harrington was acting under the authority or color of state law as he was acting in the course and scope of his employment with the City as police Officer.

37.   Upon information and belief, on or about July 11, 2017, at approximately 8:15 p.m. Leavenworth 911 operators received a call to the home of Garcia regarding a possible stolen vehicle.

38.   Upon information and belief, Officer Harrington arrived at the home located at 1708 Rose Street Leavenworth, Kansas 66048 and parked his vehicle on the street in front of the home.

39.   Upon information and belief, Officer Harrington approached and knocked on the front door. The door was answered by Jordan Hart, Garcia's 19-year-old adult step-son.

40.   Upon information and belief, Officer Harrington entered the home.

41.   Upon information and belief, Jordan told Officer Harrington that Antonio Garcia, Jr. was not at the home, and had driven away in a vehicle a few minutes earlier.

42.   Upon information and belief, Jordan told Officer Harrington that Heather Garcia owned the vehicle Garcia was driving and Officer Harrington told Jordan Hart that it was a civil matter because Antonio and Heather were legally married.

43.   Upon information and belief, after learning that the vehicle was not stolen, Officer Harrington radioed dispatch and stated that the situation was not a criminal matter.

44. Upon information and belief, at about the same time, Garcia pulled his legally owned vehicle into the driveway at his residence and parked the vehicle.

45. Upon information and belief, Officer Harrington exited the home and went down several stairs towards the vehicle being driven by Garcia with his right hand on his gun.

46. Upon information and belief, when Officer Harrington approached the vehicle, all of the doors of the vehicle were closed, and all of the windows were rolled up.

47. Upon information and belief, Officer Harrington grabbed the driver's side door handle with his left hand and began pulling open the door.

48. Upon information and belief, Garcia pulled the door closed.

49. Upon information and belief, Officer Harrington once again with his right hand on his gun began yelling and attempted to open the door with his left hand.

50. Upon information and belief, once again Garcia pulled the door closed.

51. Upon information and belief, Officer Harrington began shouting and moving away from the vehicle while discharging his gun hitting the vehicle and Garcia.

52. Garcia never verbally threatened Officer Harrington.

53. Garcia was not sarcastic or verbally abusive to Officer Harrington.

54. Garcia never attacked or assaulted Officer Harrington or made any attempt to do so.

55. Garcia never lunged or moved towards Officer Harrington in any threatening manner.

56. Officer Harrington did not warn Garcia that if he did not allow him to open the vehicle door that he would be shot and killed.

10

57.   Following the shooting, Garcia's wife, a trained medical provider, attempted to provide first aid to Garcia, but was removed from the scene.

58.   Officer Harrington spent valuable time removing witnesses from the scene rather than providing medical assistance to Garcia.

59.   Officers' actions after the shooting hindered the investigation of this matter.

## FEDERAL CIVIL RIGHTS CLAIMS

60.   The Civil Rights Act, codified as 42 U.S.C. § 1983, provides as follows:

Every person who, under color of any statute, ordinance, regulation, custom or usage, of any state or territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or any other person within the jurisdiction thereof to the deprivation of any laws, privileges or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.

61.   Plaintiff alleges that Defendants, jointly and/or severally, deprived the Decedent Garcia of his Fourth Amendment rights.

62.   Defendants violated Garcia's rights in one or more of the following ways:

a.   By using excessive and deadly force in the course of Officer Harrington's attempts to seize Garcia, in violation of the Fourth Amendment and its reasonableness standard. Plaintiff pleads that Garcia was unlawfully shot and killed and this action resulted directly and only from a use of force that was clearly excessive to the need, and was objectively unreasonable;

b.   By failing to provide immediate medical attention to Garcia, where it was clearly necessary and required by law;

c.   By maintaining or allowing policies and customs which condoned or encouraged the use of excessive force;

      d.  By failing to provide supervision and/or proper training to prevent such incidents of excessive force.

63.    Defendants' violations of Garcia's Constitutional rights resulted in Garcia's suffering and death and were a direct cause of the injuries and damages alleged herein.

**COUNT ONE**
**42 U.S.C. § 1983 – OFFICER LIABILITY**
**(Defendant Matthew Harrington)**

64.    Plaintiff incorporates by reference all allegations set forth herein.

65.    Plaintiff brings claims against Officer Matthew Harrington individually, as well as in his official capacity, pursuant to 42 U.S.C. § 1983.

66.    At all material times, Officer Harrington was acting under color of state law as an agent and employees of the City.

67.    Officer Harrington was wearing his official Leavenworth Police Department uniform and was acting in the course and scope of his duties as a Leavenworth Police Officer when he shot and killed Garcia.

68.    Officer Harrington was wearing his official Leavenworth Police Department uniform and was acting in the course and scope of his duties as a Leavenworth Police Officer when he failed to protect Garcia from being shot and killed.

69.    It is an unreasonable excessive use of force for a police Officer to shoot a person who does not pose any immediate threat of harm to any Officer or the public.

70.    Officer Harrington shot at Garcia several times, striking him multiple times, even though he did not pose any immediate threat of harm to any Officer or to the public.

71.   Summarizing facts set forth more fully above and incorporated herein:

    a.   When Officer Harington arrived, Garcia was not at the home.

    b.   Officer Harrington confirmed that he was not investigating a crime and that he was there for a civil matter

    c.   Antonio Garcia, Jr. was not the subject of a criminal investigation.

    d.   Officer Harrington had **not** been informed that anyone in the house had been injured. In addition, after arriving at the residence, Officer Harrington reported to dispatch that no crimes had occurred at the home.

    e.   At no time while Officer Harrington was present did Garcia pose an immediate threat to his safety or the safety of others.

    f.   At no time while Officer Harrington was present did Garcia resist arrest or attempt to flee the scene.

    g.   Garcia never physically threatened Officer Harrington, never verbally threatened to harm or attack Officer Harrington, never attacked or assaulted Officer Harrington or made any attempt to do so, and never lunged at or moved towards Officer Harrington in any threatening manner.

    h.   When Garcia was shot, and killed by Officer Harrington, he was not fleeing, was not resisting, and did not pose an immediate threat to the safety of any Officer or to anyone else.

72.   Considering the totality of the circumstances, Officer Harrington at the time of the incident could not reasonably conclude that Garcia posed an immediate threat to his safety or the safety of others.

73.  It was unreasonable for Officer Harrington to seize Garcia by shooting and killing him.

74.  Officer Harrington did not have probable cause to believe that Garcia posed a threat of serious physical harm, either to himself or others.

75.  If Officer Harrington believed Garcia posed a threat to himself or others, he failed to follow proper procedures to protect Garcia from harming himself or others, or to protect Garcia from being shot and killed.

76.  No reasonable Officer would have followed the procedures of Officer Harrington including shooting and killing Garcia.

77.  Officer Harrington's deliberate conduct created a situation that the Defendants may claim created probable cause for the use of deadly force.

78.  By using unreasonable deadly force while acting under color of state law, Officer Harrington violated Garcia's rights under the United States Constitution and cause him injuries and wrongful death and are liable to Plaintiffs for all damages alleged herein, in addition to punitive damages.

**COUNT TWO**
**42 U.S.C. § 1983 – MUNICIPAL LIABILITY FOR POLICY OR CUSTOM**
**(Defendant City of Leavenworth)**

79.  Plaintiffs incorporates by reference all allegations set forth herein.

80.  Plaintiffs brings this claim against the City under 42 U.S.C. § 1983.

81.  The unconstitutional shooting and death of Garcia was caused by a municipal policy or custom of the City.

82.  The City was on actual or constructive notice that its custom/practice posed a substantial risk of subjecting people the police were likely to come into contact

with, such as Garcia, to unreasonable and excessive use of deadly force by City Officer, yet the City was deliberately indifferent to that risk.

83. In July 2017, when Officer Harrington made the decision to shoot Garcia, Officer Harrington had been trained and supervised by the City and understood the City's custom and practice to use deadly force regardless of an actual threat.

84. The City's custom/practice, so well settled as to constitute custom or usage with force of law, authorizing the use of deadly force whenever an Officer perceived a theoretical threat rather than an actual threat, was a moving force of the shooting, injuries and death of Garcia.

85. Additionally and alternatively, at all times material herein, the City's widespread custom/practice, so well settled as to constitute custom or usage with force of law, was to always approve, ratify and defend the use of deadly force by City police Officers regardless of whether circumstances raised questions about whether there had been any actual, immediate threat to safety by: 1) failing to discipline, criticize or seek to change such conduct; 2) failing to genuinely question or investigate the propriety of such conduct; 3) working to hide and protect from public disclosure the events of the incident and any possible incriminating evidence following the incident; and 4) determining the use of deadly force was justified regardless of the circumstances.

86. The City knew or should have known that its custom and practice posed a substantial risk of subjecting people that the police were likely to come into contact with, such as Garcia, to unreasonable and excessive uses of deadly force by City Officers, yet the City was deliberately indifferent to that risk.

87.    In July 2017, when Officer Harrington shot and killed Garcia, Officer Harrington knew that under the City's custom/practice, the City would not meaningfully punish or discipline him  for shooting and killing Garcia, the City would not genuinely question or investigate the propriety of shooting Garcia, the City would work to hide and protect from evidence statements and conduct following the event, and the City would determine that the shooting was justified.

88.    Officer Harrington's knowledge of the City's custom/practice was a moving force behind the shooting, injuries and death of Garcia.

89.    Because a City policy or custom was a moving force of the Officer's unconstitutional shooting of Garcia, the City is liable for the violation of Garcia's rights under the United States Constitution, for Garcia's injuries and wrongful death, and for the damages alleged herein.

90.    Additionally, and alternatively, at all times herein, the City had a policy, custom and/or practice, so well settled as to constitute custom or usage with force of law that encouraged unreasonable and unjustified use of deadly force. This policy was to shoot-first-ask-questions-later. This no hesitation shooting policy is in contrast to the relatively conservative "continuum of force" approach used by other police forces whereby Officers are to gradually increase the level of force in response to the level of force used by a suspect. The City authorized ahead of time and ratified after the fact unreasonable and unjustified uses of deadly force by having a policy, custom or practice or no hesitation, shoot first, ask questions later.

91.     The City was on actual or constructive notice that its practice and policy of shoot-first-ask-questions-later posed a substantial risk of subjective people that the policy were likely to come into contact with, such as Garcia, to unreasonable and excessive use of deadly force by City Officers, yet the City was deliberately indifferent to that risk.

92.     In July 2017, when Officer Harrington made the decision to shoot and kill Garcia, Harrington knew that under the City's policies/customs/practices of encouraging and authorizing before the fact and ratifying after the fact the use of deadly force, after a no hesitation shoot-first-ask-questions-later, as opposed to the relatively conservative "continuum of force" approach, so well settled as to constitute custom or usage with force of law, that Harrington's use of deadly force would be considered authorized or justified.

93.     Officer Harrington's knowledge of and the existence of the City's widespread policies/customs/practices, so well settled as to constitute custom or usage with force of law, to encourage and authorize before the fact and ratify after the fact the use of deadly force after a no hesitation shoot-first-ask-questions-later by Harrington was a moving force behind the shooting, injuries and death of Garcia.

94.     Because a City policy, custom or practice was a moving force of Officer Harrington's unconstitutional shooting of Garcia, the City is liable for the violation of Garcia's rights under the United States Constitution, for Garcia's injuries and wrongful death, and for the damages alleged herein.

**COUNT THREE**
**42 U.S.C. § 1983 – MUNICIPAL LIABILITY FOR FAILURE TO TRAIN AND SUPERVISE**
**(Defendant City of Leavenworth)**

95.  Plaintiff incorporates by reference all allegations set forth herein.

96.  The shooting of Garcia by Officer Harrington was unreasonable, excessive and unconstitutional.

97.  The shooting of Garcia arose under circumstances that are usual and recurring circumstances with which Leavenworth Police Officers must deal.

98.  The unconstitutional shooting and death of Garcia was caused by a failure of the City to properly or sufficiently train and supervise its police officers that amounts to deliberate indifference by the City to the rights of persons with whom the police come into contact, such as Garcia. The improper, lack of or insufficient training and supervision, included, without limitation: training Officers never to hesitate to use deadly force; training Officers to shoot first, and ask questions later; failing to train Officers to gradually increase the level of force in response to the lever of force used by a suspect; failing to train Officers the proper method to encounter an individual; training Officers that their use of deadly force will not cause them to suffer any disciplinary action; training Officers how to use unreasonable deadly force and avoid responsibility; instructing Officers to turn off their video and audio recording devices to prevent recording evidence of conversations and events that occur after an incident; as well as the facts regarding training and supervision referenced in this Complaint.

99.  The need for more or different training and supervision of Officers was so obvious, and the inadequacy so likely to result in the violation of Constitutional

rights, that the City's policymakers can reasonably be said to have been deliberately indifferent to the need.

100.  They City knew of should have known that its training and supervision of Officers with regard to the use of deadly force would likely result in injury to those who come into contact with the police, such as Garcia.

101.  The City's failure to train and supervise Officers with regard to the proper use of deadly force was a moving force of the shooting, injuries and death of Garcia.

102.  Because the unconstitutional shooting and death of Garcia was caused by a failure of the City to properly train and supervise its police Officers, that amounts to deliberate indifference by the City to the rights of person with whom the police come into contact, the City is liable for the violation of Garcia's rights under the United States Constitution, for Garcia's injuries and wrongful death, and for the damages alleged herein.

103.  Following the shooting of Garcia, Officer Harrington failed to provide necessary medical treatment to Garcia despite his suffering.

104.  Instead of providing immediate medical care, Officers removed witnesses from the scene.

105.  The City failed to train Officers to provide medical treatment following a shooting by Officers.

106.  Officer Harrington had a duty to provide reasonable and necessary medical attention to Garcia.

107.  The Officer's actions resulted in his injuries and death.

108. The failure to train reflects a deliberate or conscious disregard for the health and safety of shooting victims, including Garcia.

109. The deficiency in training caused the police Officers' indifference to Garcia's medical needs.

110. The policy or custom of the City to provide proper medical care was reckless, intentional, or with gross negligence and the lack of training was so reckless or grossly negligent that the deprivation of a person's constitutional rights was substantially certain to result and resulted in the deprivation of Garcia's constitutional rights.

**COUNT FOUR**
**WRONGFUL DEATH**
**(All Defendants)**

111. Plaintiff incorporates by reference all allegations set forth herein.

112. Defendants owed a duty to Garcia not to harm him and to only use reasonable force if necessary.

113. Defendants breached that duty to Garcia by shooting and killing him.

114. Defendants' unreasonable, negligent, and unlawful use of force directly and proximately caused the wrongful death of Garcia.

115. Pursuant to the Kansas Tort Claims Act ("KCTA"), Defendant City is liable as a matter of law for the actions of Defendant Officer if they are unreasonably, wantonly, or maliciously injured Garcia in the scope of their employment.

116. No exception to the KCTA applies in this case.

117. As a direct and proximate result of the wrongful shooting and death of Garcia, Plaintiff suffered and will continue to suffer damages, including but not limited to,

a) mental anguish, suffering, and bereavement, b) loss of society, comfort, and companionship, c) loss of Garcia's services, attention, advice, and protection, d) loss of earnings and financial support, and e) funeral expenses.

118. On October 13, 2017, Plaintiffs provided notice of claims under the Kansas Tort Claims Act to Defendants as required by K.S.A. § 12-105b.

119. The 120-day period lapsed, which constitutes a constructive denial of the claim.

120. The claims for Garcia's injuries and wrongful death survive his death pursuant to K.S.A. 60-1801.

121. As a direct and proximate result of the wrongful death of Garcia, her estate suffered damages.

### DAMAGES

122. Plaintiff, Heather Garcia, individually and as heir to Antonio Garcia, Jr., deceased, and Midwest Trust Company as administrator of an on behalf of the estate of Antonio Garcia, Jr., and on behalf of all heirs of Antonio Garcia, Jr. hereby sues for the following damages: value of the loss of the life of Antonio Garcia, Jr.; Antonio Garcia, Jr.'s funeral burial expenses; pain and suffering by Antonio Garcia, Jr. before his death; and mental anguish suffered by Antonio Garcia, Jr. before his death.

123. Plaintiff, individually and as heir to Antonio Garcia, Jr., deceased, and Midwest Trust Company as administrator of and on behalf of the estate of Antonio Garcia, Jr., and on behalf of all heirs of Antonio Garcia, Jr. hereby sues for the following damages: pecuniary loss; loss of support; loss of companionship; mental anguish; bereavement; loss of society; loss of care; loss of comfort; loss of

protection; loss of affection; lost wages Antonio Garcia, Jr. would have earned; and loss of household services.

124.   Plaintiff, individually and as heir to Antonio Garcia, Jr., deceased, and Midwest Trust Company as administrator of and on behalf of the estate of Antonio Garcia, Jr., and on behalf of all heirs of Antonio Garcia, Jr. hereby also sues for punitive damages because Defendants' conduct was grossly negligent, reckless, committed with callous indifference and/or was intentional.

125.   Plaintiff also sues for attorneys' fees, costs, and expenses incurred in prosecuting this action under 42 U.S.C. § 1988 and 42 U.S.C. § 1983.

## PRAYER

WHEREFORE, Plaintiff prays for judgment against Defendants for all damages, punitive damages, attorneys' fees, costs and expenses in an amount in excess of $75,000 and for such other and further relief the Court deems just and appropriate.

## JURY TRIAL DEMAND

Plaintiff respectfully requests that this matter be tried to a jury of twelve (12) on all claims against the Defendants.

Respectfully Submitted,

BARNES LAW FIRM, LLC

 /s/ John M. Cusick
John M. Cusick, KS Bar No. 20670
Kenneth E. Barnes, KS Bar No. 19381
Kyle S. Belew, KS Bar No. 24728
919 W. 47th Street
Kansas City, MO 64112-1225
(816) 221-4321 Telephone
(816) 471-4321 Facsimile
eMail: kbarnes@law4321.com
eMail: jcusick@law4321.com
eMail: kbelew@law4321.com

ATTORNEYS FOR PLAINTIFF